IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BURTON SWARTZ and NANCY D. SWARTZ, | CIVIL NO. 10-00651 LEK-RLP |
| Plaintiffs, | |
| vs. | |
| CITY MORTGAGE, INC.; ABN AMRO MORTGAGE GROUP, INC.; AMERICAN GUARDIAN FINANCIAL GROUP, INC.; FIRST NATIONAL MORTGAGE SERVICES, LLC; JOHN DOES 1-10; JANE ROES 1-10; DOE CORPORATIONS, PARTNERSHIPS OR OTHER ENTITIES 1-10, | |
| Defendants. | |

**ORDER GRANTING DEFENDANTS CITI MORTGAGE, INC. AND ABN AMRO MORTGAGE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS AGAINST MOVANTS IN THE COMPLAINT FILED ON NOVEMBER 8, 2010**

On October 3, 2012, Defendants Citi Mortgage, Inc. ("CMI") and ABN Amro Mortgage Group, Inc. ("ABN", collectively "Moving Defendants") filed their Notice of Re-Filing of Motion for Summary Judgment on All Claims Against Movants in the Complaint Filed on November 8, 2010 ("Notice"). [Dkt. no. 56.] Defendants originally filed the underlying Motion for Summary Judgment on All Claims Against Movants in the Complaint Filed on November 8, 2010 ("Motion") on March 18, 2011. [Dkt. no. 17.] Plaintiffs Burton F. Swartz and Nancy D. Swartz ("Plaintiffs")

filed their memorandum in opposition to the Motion on May 20,

2011, and the Moving Defendants filed their reply on May 26,

2011.  [Dkt. nos. 27, 29.]  After the filing of the Notice, this

Court gave the parties the opportunity to file supplemental

memoranda addressing any changes in the relevant facts or

applicable law since the original briefing.  [Dkt. no. 57.]

Plaintiffs, however, chose not to file a supplemental memorandum

in opposition, and therefore the Moving Defendants could not file

a supplemental reply.  This matter came on for hearing on

October 29, 2012.  Appearing on behalf of the Moving Defendants

was Cheryl Nakamura, Esq., and appearing on behalf of Plaintiffs

was Robin Horner, Esq.  After careful consideration of the

Motion, supporting and opposing memoranda, and the arguments of

counsel, the Moving Defendants' Motion is HEREBY GRANTED for the

reasons set forth below.

## BACKGROUND

Plaintiffs filed the instant action on November 8, 2010

against CMI, ABN, American Guardian Financial Group, Inc.

("American Guardian"), and First National Mortgage Services, LLC.

("First National", all collectively, "Defendants").  The instant

case arises from the loan origination and eventual mortgage

foreclosure upon Plaintiffs' property.  Also on November 8, 2010,

Plaintiffs filed a Notice of Pendency of Action stating, *inter

alia*, that the case relates to 75-635 Makapono Place, Kailua-

Kona, Hawaii 96740, TMK (3)7-5-016-078 ("the Property").    [Dkt.

no. 4.]   Plaintiffs have not filed any evidence that they served

their Complaint on any of the Defendants.   CMI and ABN, however,

appeared in the action and eventually filed an answer on March 4,

2011.[1]   [Dkt. no. 16.]

I.   **Factual Background**

         Plaintiffs state that they spoke with First National in

late 2006 about obtaining a single loan to finance the purchase

of the Property.   According to Plaintiffs, First National

represented that it would arrange one loan with one monthly

payment.   [Complaint at ¶¶ 13-15.]   Plaintiffs state that they

"were financially unsophisticated and lacked the ability to

negotiate loan terms" and therefore they put their "trust and

faith" in First National, and any lenders it worked with, to

provide Plaintiffs with "a suitable loan product."   [Id. at

¶ 16.]   First National secured a commitment for a thirty-year,

fixed conventional loan for Plaintiffs.   Plaintiffs state that

they entered into the transaction in reliance on the

representations that First National made.   [Id. at ¶¶ 17-18.]

According to Plaintiffs, they provided First National with a loan

application containing accurate information, but First National

---

[1] The Moving Defendants state that Plaintiffs did not serve
them with the Complaint, but that they answered the Complaint
because of Plaintiffs' ongoing default.   [Mem. in Supp. of Motion
at 5.]

"prepared a loan application that greatly overstated Plaintiffs [sic] income and assets without Plaintiffs [sic] knowledge or consent." [Id. at ¶ 19.] Plaintiffs also allege that they did not receive an initial truth-in-lending statement within three days of submitting their loan application. [Id. at ¶ 20.]

The closing for Plaintiffs' loan was scheduled on September 25, 2006. On that day, Plaintiffs expected that the transaction would involve one loan, as they requested. First American, ABN, and American Guardian, however, prepared documents for two loans. According to Plaintiffs, prior to that date, none of the Defendants disclosed to Plaintiffs that the transaction would involve two separate loans. [Id. at ¶¶ 21-23.] Plaintiffs questioned why they needed two loans instead of one and why the interest rate was higher than the rate they were promised. Plaintiffs state that "Defendants explained that the specific terms did not matter because Plaintiffs were going to refinance within 2 months at no charge into a jumbo loan." [Id. at ¶ 24.] Plaintiffs signed all of the loan documents that First American, ABN, and American Guardian presented to them, but Plaintiffs allege that First American, ABN, and American Guardian did not explain the documents and did not allow Plaintiffs to read what they were signing. Plaintiffs also claim that, at the time they applied for the loan, they had good credit and should have qualified for a fixed thirty-year loan, which would have been

4

best for Plaintiffs under their financial circumstances. Plaintiffs further allege that they did not receive signed and dated good faith statements in connection with the loans. [Id. at ¶¶ 26-29.] Plaintiffs also complain that the second loan was not "a fully amortized thirty year loan" and that the combined monthly payments for the first loan and the second loan "substantially exceeded Plaintiffs' gross monthly income in 2005 and 2006." [Id. at ¶¶ 38-39.]

Plaintiffs acknowledge that CMI's parent acquired ABN. [Id. at ¶ 31.]

Plaintiffs allege that they experienced "extreme hardship" making their loan payments and asked CMI for a loan modification. CMI represented that it would consider modifying Plaintiffs' loan, but later informed Plaintiffs that the owner of the loan, or loans, would not approve modification. CMI referred the matter to an attorney for foreclosure. At the same time, however, CMI gave Plaintiffs a letter instructing them to submit further financial information to allow CMI to review their loan modification request. [Id. at ¶¶ 32-37.]

The Complaint alleges the following claims: violations of the Federal Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. ("Count I"); violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., ("Count

II"); fraudulent misrepresentation ("Count III"); breach of
fiduciary duty ("Count IV"); unjust enrichment ("Count V"); civil
conspiracy ("Count VI"); complaint to quiet title ("Count VII");
violation of Hawaii Bureau of Conveyances Regulations ("Count
VIII"); mistake; ("Count IX"); unconscionability ("Count X");
unfair and deceptive acts or practices ("UDAP"), in violation of
Haw. Rev. Stat. §§ 480-2(a) and/or 481A-3 ("Count XI"); failure
to act in good faith ("Count XII"); recoupment ("Count XIII");
negligent and/or intentional infliction of emotional distress
("NIED", "IIED" and "Count XIV"); violation of the right to
privacy under the Hawai`i Constitution ("Count XV"); violation of
Haw. Rev. Stat. Chapter 667 ("Count XVI"); violation of the Fair
Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p,
as amended ("Count XVII"); and violations of the Equal Credit
Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.*, and the Home
Mortgage Disclosure Act ("HMDA"), 12 U.S.C. § 2801, *et seq.*,
("Count XVIII").

          The Complaint prays for: a judgment of rescission;
statutory, actual, treble, and punitive damages; a temporary
restraining order or an injunction; a judgment of recoupment,
reimbursement and/or indemnification; and any other appropriate
relief.

I.   **Motion**

        In connection with the instant Motion, the Moving

Defendants state that, on or about September 26, 2006, Plaintiffs

applied for a loan to purchase the Property.  Plaintiffs applied

by telephone through First National, a mortgage broker.  [Moving

Defs.' Concise Statement in Supp. of Motion ("Defs.' CSOF"),

filed 3/18/11 (dkt. no. 18), Decl. of Defs.' Agent ("Agent

Decl."),[2] at ¶ 4A, Exh. A (Uniform Residential Loan Application -

"Loan Application")).]  The purchase price of the Property was

$990,000.00.  [Agent Decl. at ¶ 4E; Loan Application at 4; Agent

Decl., Exh. E (U.S. Department of Housing and Urban Development

Settlement Statement - "Settlement Statement").]

        First National prepared two loan applications on

Plaintiffs' behalf, the first for a $625,000.00 loan from ABN at

a fixed rate of 7.25%, to be secured by a first mortgage on the

Property.  [Loan Application at 1.]  This loan is the subject of

the instant Motion.[3]  [Mem. in Supp. of Motion at 2.]  ABN "did

not obtain any information directly from Plaintiffs, made no

representations to Plaintiffs during the loan application

process, and did not prepare their loan application."  [Agent

---

        [2] Lorissa Russelburg, a CMI "Business Ops Support Analyst"
signed the Agent Declaration.  [Agent Decl. at ¶ 1.]

        [3] The second loan was from American Guardian and is secured
by a second mortgage on the Property ("Second Mortgage").  [Agent
Decl. at ¶ 6.]  That loan is not at issue in the instant Motion.
[Mem. in Supp. of Motion at 2.]

Decl. at ¶ 5.]

Plaintiffs executed a promissory note dated September 27, 2006 for the loan from ABN ("First Note"). [Id. at ¶ 4B, Exh. B.] Plaintiffs also executed a Mortgage dated September 27, 2006 ("First Mortgage") in favor of ABN, recorded on October 5, 2006 in the Bureau of Conveyances of the State of Hawai`i ("BOC") as Document No. 2006-182768. [Agent Decl. at ¶ 4C, Exh. C.] As part of the loan transaction, Plaintiffs both signed: a Truth-in-Lending Disclosure Statement ("TILA Disclosure"), acknowledging having received and read the disclosure; [Agent Decl. at ¶ 4D, Exh. D;] the Settlement Statement, which authorized the disbursements indicated therein; [Agent Decl. at ¶ 4E, Settlement Statement at 3;] and a Notice of Right to Receive a Copy of Your Appraisal [Agent Decl. at ¶ 4F, Exh. F].

On September 1, 2007, ABN was merged into CMI. Plaintiffs' loan was not sold to any other party. [Agent Decl. at ¶ 3.] The Moving Defendants state that CMI is "formerly known as" ABN. [Id. at ¶ 9.] CMI filed a Petition for Order Regarding Merger in the Land Court, State of Hawai`i ("Land Court"), on March 17, 2008, and a Land Court judge granted the petition. The petition and order were recorded with the Land Court on March 25, 2008 as order no. 174212. [Id., Exh. J.]

Prior to the merger, the Moving Defendants informed Plaintiffs, via a letter dated August 10, 2007, that the

8

servicing of their loan with ABN was being transferred to CMI. The letter gave Plaintiffs contact information for ABN and CMI, informed them that the transfer would be effective as of September 1, 2007, and provided Plaintiffs with a payment coupon. [Agent Decl. at ¶ 7, Exh. H.]  Plaintiffs thereafter made their mortgage payments to CMI.  [Agent Decl. at ¶ 8.]

Plaintiffs defaulted on the terms of the First Note and First Mortgage by failing to pay the amounts due thereunder when they became due and payable.  [Id. at ¶ 11.]  The Moving Defendants emphasize that Plaintiffs do not deny this fact. [Mem. in Supp. of Motion at 3.]  Plaintiffs did make numerous requests to modify their loan but, after CMI approved one modification, Plaintiffs failed to sign and return the modification forms.  CMI denied other modification requests for various reasons.  Plaintiffs never cured their default.  [Agent Decl. at ¶ 12.]

The Moving Defendants state that, "[i]n compliance with and pursuant to Haw. Rev. Stat. §§ 667-5 through 667-10 and the terms of the [First] Note and [First] Mortgage, Defendant CMI exercised its right to foreclose on the Property through a non-judicial foreclosure[.]"  [Id. at ¶ 13.]  CMI retained foreclosure counsel, the law firm of Clay Chapman Iwamura Pulice & Nervell ("Clay Chapman"), in Honolulu.  [Id.; Defs.' CSOF,

Decl. of Foreclosure Counsel ("Counsel Decl."),[4] at ¶¶ 1-2.]
Ms. Parker, who is licensed to practice law in the State of
Hawai`i, sent Plaintiffs a letter dated July 21, 2010, notifying
them of the debt and their right to request debt verification
within thirty days.  [Agent Decl. at ¶ 14; Counsel Decl. at ¶ 3,
Exh. I.]  Neither CMI nor Clay Chapman received a request for
verification within the required thirty-day period.  [Agent Decl.
at ¶ 14; Counsel Decl. at ¶ 3.]

　　　The Property was sold to an outside bidder for
$508,501.00 at an October 20, 2010 public auction.  This was the
highest bid at the auction.  The required ten percent deposit has
been deposited in an escrow account, but no quitclaim deed
conveying title to the purchaser has been recorded.  [Counsel
Decl. at ¶ 6.]  The Moving Defendants believe that Plaintiffs
filed this action to delay completion of the foreclosure sale.
Plaintiffs filed a Notice of Pendency of Action in the BOC,
effectively staying the foreclosure proceedings until the
resolution of Plaintiffs' claims.  [Mem. in Supp. of Motion at
5.]

　　　First, the Moving Defendants argue that Plaintiffs are
not financially unsophisticated parties.  The Moving Defendants
note that, at the time Plaintiffs applied for the loan,

---

[4] Hillery A.K.L. Parker, Esq., an associate with Clay
Chapman, signed the Counsel Declaration.  [Counsel Decl. at ¶ 1.]

10

Plaintiffs owned three other properties, including the property (valued at $1,300,000.00) that was their personal residence at the time they were purchasing the subject Property, and two rental properties with a combined value of $730,000.00. Plaintiffs owned their residence and one of the rental properties outright, and owed only $36,782.00 on the other rental property, which was valued at $430,000.00.  Plaintiffs were also self-employed; their company was called AG Water Hawaii Corporation. [Id. at 6-7 (citing Loan Application at 2-3).]

The Moving Defendants argue that, as a matter of law, Plaintiffs cannot prevail on any of their federal law claims.

### A.   **Count I - TILA & RESPA**

Plaintiffs allege that: ABN failed to disclose certain charges in the TILA Disclosure; the TILA Disclosure included a different rate than Plaintiffs were promised; Defendants did not provide them with all of the disclosures required under TILA; and Defendants did not provide them with a good faith estimate within three days of their loan application, as required by RESPA. [Complaint at ¶ 44.]  The Moving Defendants emphasize that they were not a party to the conversations that Plaintiffs had with First National.  The Moving Defendants made no representations to Plaintiffs other than those in the documents that ABN provided Plaintiffs, including the TILA Disclosure.  [Agent Decl. at ¶ 5, Exh. D.]

11

The Moving Defendants argue that TILA rescission is not available because the purpose of Plaintiffs' loan was to purchase the Property.  [Mem. in Supp. of Motion at 8-9 (some citations omitted) (citing 15 U.S.C. §§ 1635(a) and (e)(1), § 1602(w); Reg. Z, 12 C.F.R. § 226.23(f)(1), § 226.2(a)(24)).]  Even if rescission were available for purchase loans, Plaintiffs' rescission claim is time-barred because Plaintiffs filed suit more than three years after entering into the loan.  [Id. at 9 (some citations omitted) (citing 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3)).]  In addition, Plaintiffs failed to bring their TILA damages claims within one year of entering into the loan.  [Id. (some citations omitted) (citing 15 U.S.C. § 1640(e)).]

The Moving Defendants argue that the RESPA claim fails because RESPA does not provide for a private right of action for failure to provide a good faith estimate.  [Id. at 10 (some citations omitted) (citing 12 U.S.C. § 2604(c)).]  Further, Plaintiffs failed to bring their RESPA claim within the one-year statute of limitations in 12 U.S.C. § 2614, and they have not asserted any basis for equitable tolling.  [Id.]

**B.   Count II - FCRA**

The Moving Defendants acknowledge that they are providers of information to credit reporting agencies under the FCRA and that they regularly reported credit information about Plaintiffs' mortgage payments.  [Id.]  The Moving Defendants

12

argue that, under the FCRA, lenders have a duty to report negative information to credit reporting agencies. [Id. at 11 (citing 15 U.S.C. § 1681s2(a)(5), (a)(7)(G)(i)).] Plaintiffs do not allege that the Moving Defendants reported the incorrect debt amount, nor do they claim that the Moving Defendants incorrectly reported that Plaintiffs were in default. Thus, Plaintiffs cannot prove an FCRA claim because the Moving Defendants' reports were accurate. [Id. at 11-12.]

C.   **Count XVII - FDCPA**

Plaintiffs allege that they requested that Defendants verify the debt, but Defendants failed to respond and failed to cease collection efforts pending verification, as required by the FDCPA. [Complaint at ¶¶ 140-42.] The Moving Defendants, however, emphasize that CMI did provide Plaintiffs with a July 21, 2010 letter, giving notice of its intent to collect and that Plaintiffs had the right to request verification of the debt, but neither CMI nor its counsel received a timely request for verification. [Agent Decl. at ¶ 14; Counsel Decl. at ¶ 3, Exh. I.] Plaintiffs' counsel sent a letter dated October 24, 2010 to Ms. Parker. The letter, *inter alia*, requested verification of the debt. [Counsel Decl., Exh. N at 3.] The Moving Defendants argue that they were entitled to ignore this letter because it was not a timely request for verification. [Mem. in Supp. of Motion at 12-13 (citations omitted).]

13

D.    **Count XVIII - ECOA (Reg B) & HMDA (Reg C)**

Plaintiffs alleged that ABN violated the ECOA and the HMDA because it did not obtain a written loan application and did not provide Plaintiffs with a signed and dated loan application. They also allege that ABN violated the ECOA by failing to notify Plaintiffs that a copy of the appraisal would be provided to them upon request.  [Complaint at ¶¶ 146-47.]  The Moving Defendants argue that these claims fail as a matter of law.  First, the HMDA does not provide for a private right of action.  Second, the ECOA does not require that the written application which a creditor accepts for a home purchase loan must be signed or that the creditor provide the applicant with a signed application.  [Mem. in Supp. of Motion at 13-14 (citing 12 U.S.C. § 2801.6; Reg. B, 12 C.F.R. § 202.4(c)).]  The Moving Defendants assert that they did obtain a written loan application from Plaintiffs through their mortgage broker, First National.  [Id. at 14; Loan Application.]  Third, Plaintiffs did receive notice of their right to request a copy of the appraisal.  [Agent Decl., Exh. F.]

Even if Plaintiffs could allege valid claims under the ECOA, they would be time-barred because Plaintiffs failed to bring them within two years of the date of the alleged violation, which occurred at the closing of the loan.  [Mem. in Supp. of Motion at 14 (citing 12 C.F.R. § 202.16(b)(2)).]

14

**E.   Supplemental Jurisdiction**

The Moving Defendants argue that, because they are entitled to summary judgment on all of Plaintiffs' federal law claims, this Court should decline to exercise supplemental jurisdiction over Plaintiffs remaining state law claims.  [Id.] In the alternative, the Moving Defendants argue that each of the state law claims fail as a matter of law.

**1.   Count III - Fraudulent Misrepresentation**

Plaintiffs allege that Defendants misrepresented or concealed material information from Plaintiffs during the loan application process.  [Complaint at ¶¶ 55-57.]  The Moving Defendants argue that they did not make any representations to Plaintiffs other than what is stated in the terms of the First Note and First Mortgage, and Plaintiffs have not alleged that those documents contain misrepresentations.  [Mem. in Supp. of Motion at 15.]  Further, the Complaint does not meet the specificity requirements for pleading fraud claims.  The Moving Defendants also emphasize that representations based on future events cannot form the basis of a fraud claim.  Finally, they note that the elements of fraudulent misrepresentation must be established by clear and convincing evidence, and they assert that Plaintiffs cannot meet this burden.  [Id. at 17-18.]

**2.   Count IV - Breach of Fiduciary Duty**

The Moving Defendants argue that this claim fails

because ABN only acted as a lender of funds, and lenders
generally owe no fiduciary duties to their borrowers.  [Id. at
18.]

### 3.   Count V - Unjust Enrichment

Plaintiffs essentially argue that Defendants were
unjustly enriched by receiving fees that Defendants failed to
fully disclose to Plaintiffs and by receiving fees from third
parties.  [Complaint at ¶¶ 68-71.]  The Moving Defendants argue
that the TILA Disclosure and the Settlement Statement set forth
all of the fees associated with Plaintiffs' loan.  [Agent Decl.,
Exhs. D & E.]  The Moving Defendants argue that there was nothing
improper about those fees.  Plaintiffs have not identified what
payments Defendants allegedly received from third parties, but
the Moving Defendants deny receiving any such payments.  Further,
even if Defendants did receive payments from third parties, the
benefit to Defendants would not be at Plaintiffs' expense.  [Mem.
in Supp. of Motion at 19.]

### 4.   Count VI - Civil Conspiracy

Plaintiffs allege that Defendants conspired among
themselves to defraud Plaintiffs.  [Complaint at ¶¶ 74-75.]  The
Moving Defendants reiterate that Plaintiffs' fraud claims fail,
and therefore the conspiracy to defraud claim must also fail.
Moreover, Plaintiffs do not allege any specific facts showing a
conspiracy between Defendants.  The Moving Defendants state that

16

ABN made the loan solely with Plaintiffs and did not receive any other economic benefit from Plaintiffs other than what is set forth in the First Note and First Mortgage.  [Mem. in Supp. of Motion at 20.]

### 5.  Count VII - Complaint to Quiet Title

The Moving Defendants argue that this is a prayer for relief rather than a cause of action; Plaintiffs seek to rescind their loan and to have their title to the Property restored clear of any interest from the First Mortgage.  The Moving Defendants reiterate that TILA rescission no longer applies, and they argue that any allegations in Count VII based on another party holding the loan are incorrect because there was no sale or transfer of the loan.  [Id. (citing Agent Decl. at ¶ 3).]

### 6.  Count VIII - Violation of Hawaii BOC Regs.

Plaintiffs allege that the Hawai`i Administrative Rules require that any transfer of a mortgage interest be recorded. [Complaint at ¶ 88.]  The Moving Defendants argue that Haw. Admin. R. § 16-178-2 only requires that, if a transfer of an interest in real property is recorded, it is subject to a special mortgage recording fee ("SMRF").  ABN, however, never transferred its interest in Plaintiffs' mortgage.  The Moving Defendants also argue that the Hawai`i Administrative Rules do not provide for a private right of action.  [Mem. in Supp. of Motion at 21.]

In addition, the Moving Defendants contend that the

filing of the petition and order regarding the merger was
sufficient notice of the merger of ABN with CMI.  A title search
of the Property will reflect the merger.  [Agent Decl. at ¶ 10,
Exh. K at 8.]  Even if the recording of an assignment of
Plaintiffs' mortgage to CMI were required, Haw. Rev. Stat. § 502-
83 provides that the effect of the failure to record an
assignment is to render the assignment void against subsequent
purchasers, lessees, or mortgagees who acted in good faith and
paid valuable consideration without notice of the unrecorded
assignment.  Plaintiffs do not fall within those categories.
[Mem. in Supp. of Motion at 21.]  Plaintiffs also had notice of
the assignment.  [Id. at 21-22 (citing Agent Decl. at ¶¶ 7-8,
Exh. H).]

### 7.   Count IX - Mistake

Plaintiffs allege that, if Defendants' actions in the
loan origination did not rise to the level of fraud, then the
parties entered into the contract based on mutual mistake,
entitling Plaintiffs to rescission.  [Complaint at ¶ 96.]  The
Moving Defendants argue that Plaintiffs cannot state a viable
claim of mistake against them because all of the terms of
Plaintiffs' loan are clearly set forth in the First Note and
First Mortgage.  [Mem. in Supp. of Motion at 22.]

### 8.   Count X - Unconscionability

Plaintiffs allege that they did not understand their

18

loans or the true terms of the loans, and therefore the terms of the notes and mortgages are unconscionable, entitling Plaintiffs to rescission.  [Complaint at ¶¶ 99-100.]  The Moving Defendants argue that Plaintiffs have not identified what specific terms or conditions are allegedly unconscionable, nor have Plaintiffs established any factual basis to support this claim.  [Mem. in Supp. of Motion at 22.]

### 9.   Count XI - UDAP

The Moving Defendants argue that any alleged UDAP violations associated with the origination of Plaintiffs' loan are time-barred because Haw. Rev. Stat. § 480-24 sets forth a four-year statute of limitations period.  The acts that Plaintiffs complain of occurred in September 2006, but they did not file this action until November 8, 2010.  Even assuming *arguendo* that Plaintiffs' UDAP claims are not time-barred, Plaintiffs have not provided any evidence that the documents which ABN provided to Plaintiffs contain any false statements.  [Id. at 23.]

### 10.   Count XII - Failure to Act in Good Faith

The Moving Defendants argue that Plaintiffs have not alleged any specific conduct by the Moving Defendants to support this claim.  ABN acted solely as the lender, and the terms of the loan are clearly set forth in the First Note and First Mortgage.  CMI only dealt with Plaintiffs in the capacity of an entity that

merged with Plaintiffs' lender.  The Moving Defendants therefore argue that Plaintiffs have not, and cannot, allege any bad faith by the Moving Defendants.  [Id. at 24.]

### 11.  Count XIII - Recoupment

The Moving Defendants argue that, under TILA, recoupment is only available as a defense to an action to collect a debt, [id. at 24 (some citations omitted) (citing 15 U.S.C. § 1640(e)),] and Plaintiffs' allegations do not support a claim for equitable recoupment.  [Id.]

### 12.  Count XIV - NIED/IIED

The Moving Defendants argue that Plaintiffs' emotional distress claims, which are based on Defendants' alleged actions and omissions in September 2006, are time-barred because Plaintiffs failed to bring this action within two years of the alleged actions and omissions.  [Id. at 24-25 (citing Haw. Rev. Stat. § 657-7)).]  The Moving Defendants also reiterate that they made no representations to Plaintiffs other than those contained in the First Note, First Mortgage, and the TILA Disclosure.  [Id. at 25.]

### 13.  Count XV - Violation of the Right to Privacy

Plaintiffs allege that Defendants violated their right to privacy under the Hawai`i Constitution by providing private financial information to non-affiliated third-parties to sell asset-backed certificates, shares or bonds.  [Complaint at

20

¶¶ 131-32.]  The Moving Defendants argue that the Hawai`i

Constitution does not mandate notice to Plaintiffs of such

disclosures.  Moreover, the Moving Defendants did not disclose

any of Plaintiffs' private information as part of the sale of

asset-backed certificates, shares or bonds.  [Mem. in Supp. of

Motion at 25 (citing Agent Decl. at ¶ 18).]  The Moving

Defendants also point out that ABN provided Plaintiffs with a

privacy notice at closing.  [Id. (citing Agent Decl. at ¶ 4H,

Exh. L).]  Finally, to the extent that this claim is based on

information that the Moving Defendants provided to credit

reporting agencies regarding the status of Plaintiffs' loan,

Plaintiffs do not have a right to privacy in any of that

information.  [Id.]

### 14.  Count XVI - Violation of Chapter 667

Plaintiffs allege that the Moving Defendants violated

Chapter 667 because the Moving Defendants were not represented by

an attorney in the foreclosure process, did not properly publish

notice of their intent to foreclose, and/or did not provide

Plaintiffs with proper notice of the foreclosure sale.

[Complaint at ¶ 136.]  The Moving Defendants argue that these

claims are frivolous.  Their foreclosure counsel was Clay

Chapman; [Agent Decl. at ¶ 13; Counsel Decl. at ¶ 2;] they

recorded a Mortgagee's Affidavit of Foreclosure Sale under Power

of Sale ("Foreclosure Affidavit") in the BOC as document no.

2010-176632; [Counsel Decl. at ¶ 4, Exh. M;] and the Foreclosure

Affidavit included evidence of personal service on Plaintiffs,

posting of notice on the Property, and publication of notice in

the Honolulu Star-Advertiser on September 14, 21, and 22, 2010

[Foreclosure Aff., Exhs. B, F, G].  The Moving Defendants

therefore argue that the foreclosure was in full compliance with

the law.

## II.  <u>Memorandum in Opposition</u>

In their memorandum in opposition, Plaintiffs first

contend that the Court should deny the Motion because there are

numerous issues of disputed material fact and because Plaintiffs

need to conduct further discovery, which they believe will

uncover additional factual disputes.  [Mem. in Opp. at 3.]

In the first section of their Memorandum in Opposition,

Plaintiffs address each count of the Complaint individually, but

they repeat the same arguments for all counts.  For each count,

Plaintiffs argue that the declarations that they submitted in

support of the Memorandum in Opposition and their Concise

Statement of Facts ("Plaintiffs' CSOF"[5]) identify disputed issues

of material fact relevant to that count.  Plaintiffs also

identify the paragraphs in the Complaint which set forth the

allegations in support of each count.  Finally, Plaintiffs

---

[5] Plaintiffs' CSOF is part of the memorandum in opposition.
[Dkt. no. 27-4.]

request leave pursuant to Fed. R. Civ. P. 56(d) to conduct
discovery before the Court rules on the Motion.  They state that
they need time to update their securitization audit and to
complete the forensic loan audits that they previously requested.
For most of the counts, Plaintiffs merely allege that the audits,
and responses to other discovery, "are likely to bring to light
additional facts in support of" that count.  See, e.g., Mem. in
Opp. at 6 (discussing Counts II and III).  Plaintiffs present no
legal arguments.

Count I (TILA and RESPA) is the only count for which
Plaintiffs give any further information about what they expect to
learn from the audits and/or discovery.  Plaintiffs expect to
obtain

> a) a more detailed analysis of underwriting
> violations and predatory loan practices, b) TILA
> and RESPA violations, c) the improper
> securitization of Swartz's loan to undisclosed 3rd
> party investors, (i) such that no entity can
> produce Swartz's original Note and Mortgage, (ii)
> Swartz's Note and Mortgage were separated during
> the securitization process, and (iii) when each
> entity acquired its interest in Swartz's Note
> and/or Mortgage, it did so knowing, or it should
> have known, of the predatory lending acts and
> omissions by [Defendants] based on the reduced
> prices they paid for their interest and
> disproportionate the [sic] returns they received.

[Mem. in Opp. at 4-5.]

In the second portion of the Memorandum in Opposition,
Plaintiffs address the further audits and discovery generally.
They state that they expect to have additional evidence to

support their existing claims, as well as additional claims which
they may seek to include.[6]  [Id. at 19-20.]

As to the fraud, unconscionability, and mutual mistake
claims, Plaintiffs state that they may learn "whether all the
required information and notices regarding the entry into,
servicing of, and attempting to foreclose on Swartz's loan(s)
were intentionally or negligently concealed from Swartzs[.]"
[Id. at 20.]  They also generally state that they may learn
whether there was mutual mistake and whether Defendants' conduct
was unconscionable.  [Id.]

As to the TILA claim and the other federal claims,
Plaintiffs state that discovery may uncover disputed issues of
fact concerning whether Defendants: made all the required
disclosures; followed standard mortgage practices and foreclosure
laws; and gave proper notice of their intent to foreclose to
Plaintiffs.  [Id. at 21.]

As to the NIED/IIED claim, Plaintiffs believe they will
discover evidence about whether Defendants caused their emotional
distress by placing them in a loan Defendants knew Plaintiffs
could not afford and by denying the loan modification.
Plaintiffs argue that Defendants knew this would potentially

---

[6] The parties' deadline to add parties and amend pleadings
has expired.  The Court therefore will not discuss Plaintiffs'
arguments about the new claims they thought they could add after
further discovery.

cause them to lose their equity and their home.  [Id. at 22-23.]

## III. **Reply**

        In their reply, the Moving Defendants first argue that
the Court must deny Plaintiffs' Rule 56(d) request.  Plaintiffs
have not stated who their auditor is, what the expected updated
audits pertain to, what the original audits state, and when the
updates will be completed.  The Moving Defendants argue that the
allegations in the Complaint about Mortgage Electronic
Registration Systems, Inc. ("MERS") and securitization are
inapplicable because Plaintiffs' First Mortgage was never
registered with MERS and it was never "securitized" or sold.  No
securitization audit will change this, and no forensic audit will
change the fact that Plaintiffs failed to make payments on their
loan.  [Reply at 2-3.]  The Moving Defendants also argue that the
mere hope of discovering further evidence is not sufficient basis
to grant a Rule 56(d) continuance, and Plaintiffs have not
satisfied the requirements of Rule 56(d).  In particular, the
Moving Defendants emphasize that Plaintiffs have not been
diligent in conducting discovery.  [Id. at 3-5.]

        The Moving Defendants argue that all Plaintiffs have
done is dispute each item in the Moving Defendants' CSOF, but
this is not enough to identify a genuine issue of fact for trial.
[Id. at 5.]  Further, Plaintiffs did not even address the Moving
Defendants' legal arguments regarding the federal claims.  As to

the FDCPA claim, Plaintiffs do not present any testimony or

evidence that they timely requested verification of the debt,

even though it should be within their possession and/or

capability to do so.  [Id. at 6-8.]

As to the state law claims, the Moving Defendants argue

that no discovery will produce evidence to defeat the arguments

in the Motion.  In addition, as to the unjust enrichment claim,

the Moving Defendants argue that there can be no action for

unjust enrichment where there is an express contract.  No amount

of discovery will change the fact that Plaintiffs' First Note and

First Mortgage are express contracts with ABN.  [Id. at 8-9.]

## DISCUSSION

## I.   Plaintiffs' Rule 56(d) Request

Pursuant to Fed. R. Civ. P. 56(d), Plaintiffs ask this

Court to either deny the Motion or defer ruling on the motion to

allow them more time to conduct discovery.  Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration
> that, for specified reasons, it cannot present
> facts essential to justify its opposition, the
> court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or
> declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Whether to deny a Rule 56(d) request for further discovery by a

party opposing summary judgment is within the discretion of the

26

district court.  <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 920-21 (9th Cir. 1996).

 "A party requesting a continuance pursuant to Rule [56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."  <u>Tatum v. City & Cnty. of San Francisco</u>, 441 F.3d 1090, 1100 (9th Cir. 2006).  Moreover, "[t]he burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists."  <u>Nidds</u>, 113 F.3d at 921.

 "Failure to comply with the requirements of Rule [56(d)] is a proper ground for denying discovery and proceeding to summary judgment."  <u>Brae Transp., Inc. v. Coopers & Lybrand</u>, 790 F.2d 1439, 1443 (9th Cir. 1986); <u>see also</u> <u>Tatum</u>, 441 F.3d at 1100-01 (finding that an attorney's declaration was insufficient to support a Rule 56 continuance where the declaration failed to specify specific facts to be discovered or explain how a continuance would allow the party to produce evidence precluding summary judgment).  Further, the requesting party is not entitled to additional discovery if he did not diligently pursue discovery prior to the motion for summary judgment.  <u>See</u> <u>Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.</u>, 525 F.3d 822, 827-28 (9th Cir. 2008).

Plaintiffs fail to comply with the requirements of Rule 56(d), and have not met their burden to proffer sufficient facts to show that the evidence sought exists.  Moreover, Plaintiffs have not shown that they diligently pursued discovery prior to the hearing on the instant Motion.

The Court notes that the optional supplemental memorandum in opposition addressing any changes in the relevant factual circumstances or the relevant law was Plaintiffs' opportunity to set forth the efforts that they undertook to diligently pursue discovery in the nineteen months between the filing of the Motion and the hearing.  Plaintiffs, however, did not file a supplemental memorandum.  At the hearing, Plaintiffs' counsel explained that Plaintiffs are older and Plaintiffs and counsel decided to devote Plaintiffs' resources to attempting to modify the loan at issue rather than to pursuing discovery. While the Court appreciates the financial burden of discovery, the Court cannot find that Plaintiffs have been diligent in pursuing discovery.  The Court therefore DENIES Plaintiffs' Rule 56(d) request.

## II.  **The Moving Defendants' Motion**

The Court first notes that, despite Plaintiffs' bare assertion that there are genuine issues of material fact precluding summary judgment, they fail to point to any evidence in the record demonstrating as much.  Rather, the Moving

28

Defendants have met their burden on summary judgment as to each claim by demonstrating that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).  Even drawing all justifiable inferences in Plaintiffs' favor, see Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006) (stating that, on a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor" (citations, quotation marks, and brackets omitted)), the Court concludes that the Moving Defendants are entitled to summary judgment on each claim, as set forth more fully below.

     **A.**   **Federal Claims**

        **1.**  **Count I (TILA and RESPA Claims)**

     Count I seeks damages pursuant to TILA and RESPA. [Complaint at ¶ 47.]  TILA claims for damages must be brought within one year of the consummation of the loan at issue.  15 U.S.C. § 1640(e); Cannon v. US Bank, NA, Civ. No. 11-00079 HG-BMK, 2011 WL 1637415, at *5 (D. Hawai`i Apr. 29, 2011) (citing King v. California, 784 F.2d 910, 915 (9th Cir. 1986)).  "The statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation." Cannon, 2011 WL 1637415, at *7; see also 12 U.S.C. § 2614.

29

According to the Complaint, Plaintiffs signed their loan documents on September 25, 2006, [Complaint at ¶ 21,] and the First Note and First Mortgage are dated either September 27, 2006 and September 28, 2006 [Counsel Decl., Exhs. B, C]. Plaintiffs filed this action on November 8, 2010.  The TILA statute of limitations is subject to equitable tolling, <u>Cannon</u>, 2011 WL 1637415, at *5, and equitable tolling may also apply to RESPA claims.  <u>Phillips v. Bank of Am.</u>, Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *9 (D. Hawai`i Jan. 21, 2011). Plaintiffs, however, have not presented any evidence that would justify equitable tolling in this case.  This Court therefore CONCLUDES that Plaintiffs' TILA and RESPA damages claims are time-barred and that the Moving Defendants are entitled to judgment as a matter of law.

Further, insofar as Plaintiffs allege a claim for rescission pursuant to TILA, this Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law because Plaintiffs failed to bring their TILA rescission claim, which allege failure to make the required TILA disclosures at the time of the loan, within the three-year statute of repose.  <u>See</u> <u>Wood v. Greenberry Fin. Servs., Inc.</u>, Civil No. 11-00150 LEK-KSC, 2012 WL 5381817, at *8 (D. Hawai`i Oct. 30, 2012) ("Where the borrower allegedly did not receive the required TILA disclosures, the borrower must bring his rescission claim within three years after

30

the loan consummation.  The three-year period is a statute of repose, which is not subject to equitable tolling." (citing 15 U.S.C. § 1635(f); <u>Cannon</u>, 2011 WL 1637415, at *6 (citing <u>Miguel v. Country Funding Corp.</u>, 309 F.3d 1161, 1164 (9th Cir. 2002)))).

Insofar as these grounds are sufficient to grant summary judgment in favor of the Moving Defendants as to Count I, the Court need not address their remaining arguments.  The Motion is therefore GRANTED as to Count I.

## 2.   Count II (FCRA Claim)

The Moving Defendants acknowledge that they are subject to the FCRA because they provide information to credit reporting agencies and they reported credit information about Plaintiffs' mortgage payments.  [Mem. in Supp. of Motion at 10.]  This district court has rejected FCRA claims that are almost identical to Plaintiffs' claim in the instant case.  For example, in <u>Amina v. WMC Mortgage Corp.</u>, the district court stated:

> The Amended Complaint asserts that "Defendants are persons who furnish information to credit reporting agencies under 15 U.S.C. § 1681s-2," and that they failed to comply 15 U.S.C. § 1681s-2(b) when they "made false statements to credit bureaus and neglected to make true statements to credit bureaus, including but not limited to an excessive amount of debt for which Plaintiffs were tricked and deceived into signing . . . ."  Doc. No. 35, Am. Compl. ¶ 189.

> LCS argues that these allegations are insufficient to state a claim pursuant to the FCRA.  The court agrees.  Pursuant to 15 U.S.C. § 1681s-2(a), furnishers of credit information have a duty to provide accurate information to a

31

credit reporting agency.  See also Gorman v.
Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th
Cir. 2009).  These duties are enforceable only by
federal and state agencies.  See id [sic]; see
also Nelson v. Chase Manhattan Mortg. Corp., 282
F.3d 1057, 1059-60 (9th Cir. 2002); 15 U.S.C.
§ 1681s-2(d) (noting that duties created under
§ 1681 s-2(a) are enforced exclusively by the
Federal agencies and officials and State
officials).  An individual may bring a private
cause of action only under 15 U.S.C. § 1681s-2(b),
where the furnisher is given notice from a credit
reporting agency of a dispute and fails to
investigate within specified time limits.  See
also Nelson, 282 F.3d at 1060.  In other words,
"[i]t is only after (1) a consumer has notified a
credit reporting agency of an inaccuracy, (2) the
agency has notified the furnisher, and (3) the
furnisher has failed to take action, that a
consumer may sue the furnisher."  See Diana I Am
v.. Nat'l City Mortg. Co., 2010 WL 571936, at *10
(D. Haw. Feb. 17, 2010).

Civil No. 10-00165 JMS/KSC, 2011 WL 1869835, at *11 (D. Hawai`i

May 16, 2011) (alterations in Amina).

     In the instant case, Plaintiffs failed to plead these

elements in the Complaint, nor have they presented any evidence

in connection with the instant Motion to establish a genuine

issue of fact as to these elements.  This Court therefore FINDS

that there is no genuine issue of material fact as to Plaintiffs'

FCRA claim, and the Court CONCLUDES that the Moving Defendants

are entitled to judgment as a matter of law.  The Motion is

GRANTED as to Count II.

     **3.   Count XVII (FDCPA Claim)**

     In Count XVII, Plaintiffs allege that Defendants

violated the FDCPA because Plaintiffs requested that Defendants

verify the debt in this case, but Defendants failed to respond in writing and Defendants continued their collection efforts pending verification of the debt.  [Complaint at ¶¶ 140-42.]

15 U.S.C. § 1692g states, in pertinent part:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that **if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector**; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

> **If the consumer notifies the debt collector in
> writing within the thirty-day period described in
> subsection (a) of this section that the debt, or
> any portion thereof, is disputed, or that the
> consumer requests the name and address of the
> original creditor, the debt collector shall cease
> collection of the debt, or any disputed portion
> thereof, until the debt collector obtains
> verification of the debt or a copy of a judgment,
> or the name and address of the original creditor,
> and a copy of such verification or judgment, or
> name and address of the original creditor, is
> mailed to the consumer by the debt collector.**
> Collection activities and communications that do
> not otherwise violate this subchapter may continue
> during the 30-day period referred to in subsection
> (a) of this section unless the consumer has
> notified the debt collector in writing that the
> debt, or any portion of the debt, is disputed or
> that the consumer requests the name and address of
> the original creditor.  Any collection activities
> and communication during the 30-day period may not
> overshadow or be inconsistent with the disclosure
> of the consumer's right to dispute the debt or
> request the name and address of the original
> creditor.

(Emphases added.)  This district court has noted that "some

courts have recognized that a 'debt collector' may encompass a

party that seeks to enforce a security interest through

foreclosure[.]"  Sakugawa v. IndyMac Bank, F.S.B., Civil No.

10-00504 JMS/LEK, 2010 WL 4909574, *5 n.3 (D. Hawai`i Nov. 24,

2010) (citing Wilson v. Draper & Goldberg, 443 F.3d 373, 376-77

(4th Cir. 2006); Selby v. Bank of Am., 2010 WL 4347629 (S.D. Cal.

Oct. 27, 2010)).

    CMI's foreclosure counsel sent Plaintiffs a letter

dated July 21, 2010 providing them with notice of the debt and

informing them that they had a right to request verification of the debt within thirty days.[7]  CMI did not receive a request for verification within that thirty-day period.  [Agent Decl. at ¶ 14.]  Plaintiffs' counsel sent CMI's foreclosure counsel a letter dated October 24, 2010 which, *inter alia*, requested verification of the debt.  [Counsel Decl., Exh. N at 3.]

        Plaintiffs did not present any evidence to create a genuine issue of material fact as to whether their October 24, 2010 request for verification was timely.  Plaintiffs present only their declarations that: "We dispute that we did not ask for debt verification as described in Defendants' CSF ¶ 18,[[8]] since we did not, and do not know who the holder of our Note and Mortgage is, exactly who we should have been contacting, and state affirmatively, we did request debt verification."  [Mem. in Opp., Decl. of Burton Swartz ("B. Swartz Decl.") at ¶ 35; id., Decl. of Nancy Swartz ("N. Swartz Decl.") at ¶ 35.]  Plaintiffs' declarations do not even assert that their request for verification was timely.  Even if this Court reads Plaintiffs' declarations as asserting that their request was timely, their unsupported, self-serving assertions are insufficient to survive

_____

[7] A copy of the July 21, 2010 letter is attached to Defendants' CSOF as Exhibit I to the Counsel Declaration.

[8] Paragraph 18 of Defendants' CSOF states: "No request for debt verification or any other written inquiry regarding the loan was received by Movants or their attorneys within 30 days of [the July 21, 2010] letter."

summary judgment.  Accord Parker v. Pressler & Pressler, LLP, 650
F. Supp. 2d 326, 342 (D.N.J. 2009) ("The closest Parker comes to
proving that she sent such a request is her apparently
spontaneous remark to Maranda Felton on August 15, 2006, when she
stated that 'Palisades has sent me a letter and 4 months ago I
responded saying that I dispute the validity of the debt, and now
I get something from Court that I am being summoned?'  This
evidence, though, is also insufficient to show that Parker
complied with her threshold burden timely to request validation."
(citation omitted)).  This Court therefore FINDS that Plaintiffs
failed to request verification of the debt within the thirty-day
period required in § 1692g.

        Plaintiffs failed to make a timely request for
verification of the debt, and CMI was entitled to ignore
Plaintiffs' untimely request for verification, which was dated
October 24, 2010.  This Court is persuaded by the district
court's reasoning in Aqu v. Rhea, No. 09-CV-4732(JS)(AKT), 2010
WL 5186839 (E.D.N.Y. Dec. 15, 2010).  In that case, the district
court stated:

>           Plaintiff's Section 1692g(b) claims fail because,
>     although he alleges that he repeatedly requested
>     that the Collection Defendants verify the
>     questioned debts, he does not allege that he made
>     any of these requests within the thirty day time
>     window that Section 1692(b) provides.  Without
>     such factual pleading, it is entirely speculative,
>     and not "plausible," that Plaintiff has a
>     cognizable claim.  After all, **for all the Court
>     knows, Plaintiff could have made only untimely**

36

> **verification requests, which the Collection
> Defendants then properly ignored.**  And, absent
> factual allegations that Plaintiff sent a timely
> Section 1692(b) demand, the Collection Defendants
> had every right to continue reporting Plaintiff's
> alleged debts to the Reporting Agency Defendants.
> See <u>Jackson v. Genesys Credit Management</u>,
> 06-CV-61500, 2007 WL 2113626, at *3 (S.D. Fla.
> 2007) (absent a timely demand under Section
> 1692g(b), nothing precludes a debt collector from
> reporting a debt to credit agencies). . . .

<u>Id.</u> at *5 (emphasis added).  Similarly, this Court agrees with

the Moving Defendants that CMI was entitled to ignore Plaintiffs'

untimely request for verification of the debt and was entitled to

continue its foreclosure efforts.  Thus, Plaintiffs have failed

to identify a genuine issue of material fact as to their FDCPA

claim, and the Court CONCLUDES that the Moving Defendants are

entitled to judgment as a matter of law.  The Motion is GRANTED

as to Count XVII.

### 4.    <u>Count XVIII (ECOA and HMDA Claims)</u>

Count XVIII alleges that Defendants violated the ECOA -

Regulation B and the HMDA - Regulation C by: 1) failing to obtain

a written loan application; 2) failing to provide Plaintiffs in

timely manner with a signed and dated loan application; and 3)

failing to provide Plaintiffs with an appraisal disclosure.

[Complaint at ¶¶ 145-48.]

This district court has rejected ECOA claims that are

almost identical to the claim in the instant case.  For example,

in <u>Letvin v. Amera Mortgage Corp.</u>, the district court stated:

The Complaint asserts that Defendants "did not provide Plaintiff with signed and dated copies of the loan application and the appraisal report used to qualify Plaintiff for the subject loan," Compl. ¶ 137, which resulted in Defendants concealing "material misrepresentations in the loan application and appraisal report." Id. ¶ 138.

Under ECOA, "[e]ach creditor shall promptly furnish an applicant, upon written request by the applicant made within a reasonable period of time of the application, a copy of the appraisal report used in connection with the applicant's application for a loan that is or would have been secured by a lien on residential real property." 15 U.S.C. § 1691(e). A claim for violation of EOCA [sic] must be brought no later than two years "from the date of occurrence of the violation," 15 U.S.C. § 1691e(f), but equitable tolling may apply under certain circumstances. See Hafiz v. Greenpoint Mortg. Funding, Inc., 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009).

The Complaint fails to assert a necessary prerequisite to Plaintiff's ECOA claim—that Plaintiff made a written request for the appraisal report within a reasonable time of his application. Further, even if Plaintiff did include such an allegation, Plaintiff applied for this loan in March 2005 and the Complaint includes no allegations indicating that equitable tolling applies. The court therefore DISMISSES Plaintiff's ECOA claim with leave to amend.

Civil No. 10-00539 JMS/KSC, 2011 WL 1603635, at *12-13 (D. Hawai`i Apr. 27, 2011).

In the instant case, Plaintiffs have neither alleged in the Complaint nor identified any evidence in connection with the instant Motion that they made a written request for an appraisal report. Further, Plaintiffs failed to file this action within two years of when the alleged violations purportedly occurred

38

during the 2006 loan application process, and Plaintiffs have not

identified any evidence that would indicate that equitable

tolling is appropriate in this case.

Further, Plaintiffs' HMDA claim fails as a matter of

law because the HMDA only provides for administrative

enforcement.  See, e.g., Wellman v. First Franklin Home Loan

Servs., No. 09 CV 1257 JM (NLS), 2009 WL 2423961, at *2 (S.D.

Cal. Aug. 4, 2009) (citing 12 C.F.R. § 203.6).

This Court therefore FINDS that there is no genuine

issue of material fact as to either Plaintiffs' ECOA claim or

their HMDA claim, and the Court CONCLUDES that the Moving

Defendants are entitled to judgment as a matter of law as to both

of those claims.  The Motion is GRANTED as to Count XVIII.

**B.   State Law Claims**

Insofar as this Court has granted summary judgment in

favor of the Moving Defendants as to all of Plaintiffs' claims

under federal law, the Moving Defendants argue that this Court

should decline to exercise supplemental jurisdiction over

Plaintiffs remaining state law claims.  [Mem. in Supp. of Motion

at 14.]  This Court, however, in the exercise of its discretion,

elects to exercise supplemental jurisdiction over Plaintiffs'

state law claims.  See Carlsbad Tech., Inc. v. HIF Bio, Inc., 556

U.S. 635, 639 (2009) ("A district court's decision whether to

exercise [supplemental] jurisdiction after dismissing every claim

over which it had original jurisdiction is purely discretionary."
(citations omitted)).   That being said, as this Court previously
stated, the Moving Defendants are entitled to summary judgment as
to each of Plaintiffs' claims.

      1.  **Count III (Fraudulent Misrepresentation Claim)**

      Count III alleges that Defendants made fraudulent
misrepresentations about various matters in the loan origination
process and about their reporting negative information about
Plaintiffs' loan to credit reporting agencies.   [Complaint at
¶¶ 56-57.8.]

      Under Hawai`i law, the elements of a fraudulent or
intentional misrepresentation claim are: "(1) false
representations made by the defendant; (2) with knowledge of
their falsity (or without knowledge of their truth or falsity);
(3) in contemplation of plaintiff's reliance upon them; and (4)
plaintiff's detrimental reliance." Miyashiro v. Roehrig,
Roehrig, Wilson & Hara, 122 Hawai`i 461, 482-83, 228 P.3d 341,
362-63 (Ct. App. 2010) (citing Hawaii's Thousand Friends v.
Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989)).   In
order to support a finding of fraud, the plaintiff must establish
these elements by clear and convincing evidence.   See, e.g.,
Hawaii's Thousand Friends, 70 Haw. at 286, 768 P.2d at 1301
(citation omitted).   The court in Miyashiro noted that:

        Section 551 of the Restatement (Second) of Torts
        also addresses liability for wrongful

non-disclosure, or fraud by omission:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them[.]

122 Hawai`i at 483 n.24, 228 P.3d at 363 n.24 (alteration in

Miyashiro).

The Complaint does not identify which of the Defendants

allegedly made the representations identified in the Complaint.[9]

_____

[9] The Moving Defendants argue that Plaintiffs did not sufficiently plead Count III because Plaintiffs failed to identify which Defendant allegedly made which misrepresentation. See Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) ("In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." (alterations in Swartz) (quotation marks and citation omitted)); see also Meridian Project Sys., Inc. v. Hardin Constr. Co., 404 F. Supp. 2d 1214, 1226 (E.D. Cal. 2005) ("When fraud claims involve multiple defendants, the complaint must satisfy Rule 9(b) particularity requirements for each defendant.").  The Court notes that this is not a motion to dismiss, and this Court concludes that, because the Moving Defendants are entitled to summary judgment on the merits of Count III, it is not necessary for to address the issue of whether Plaintiffs sufficiently pled

(continued...)

The Moving Defendants have presented testimony that the only representations that ABN made in connection with the loan origination process are the terms set forth in the loan documents themselves.  [Agent Decl. at ¶ 5.]  Plaintiffs have not identified any evidence establishing that there is a genuine issue of material fact as to whether ABN made allegedly fraudulent misrepresentations in connection with the loan origination or as to whether the Moving Defendants made allegedly fraudulent misrepresentations in connection with their reports to credit reporting agencies.  Morever, Plaintiffs have not established that they can carry their burden of proof as to their fraudulent misrepresentation claim against the Moving Defendants.

This Court therefore FINDS that there is no genuine issue of material fact as to Plaintiffs' fraudulent misrepresentation claim against the Moving Defendants, and the Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law.  The Motion is GRANTED as to Count III.

## 2.   Count IV (Breach of Fiduciary Duty Claim)

Count IV alleges that Defendants "breached their fiduciary duties to the Plaintiffs by fraudulently inducing Plaintiffs to enter into a mortgage transaction which was

---

[9](...continued)
Count III.

42

contrary to the Plaintiffs [sic] stated intentions; contrary to the Plaintiffs' interest; and contrary to the Plaintiffs' preservation of their home." [Complaint at ¶ 64.]

ABN was the original lender of the loan at issue in this case, and ABN was later merged into CMI. [Agent Decl. at ¶¶ 2-3.] This district court has recognized that:

> Lenders generally owe no fiduciary duties to their borrowers. See, e.g., Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); Miller v. U.S. Bank of Wash., 865 P.2d 536, 543 (Wash. App. 1994) ("The general rule . . . is that a lender is not a fiduciary of its borrower."); Huntington Mortg. Co. v. DeBrota, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A lender does not owe a fiduciary duty to a borrower absent some special circumstances."); Spencer v. DHI Mortg. Co., 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'") (quoting Oaks Mgmt. Corp. v. Super. Ct., 51 Cal. Rptr. 3d 561 (Cal. App. 2006)); Ellipso, Inc. v. Mann, 541 F. Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature.") (citation omitted).

McCarty v. GCP Mgmt., LLC, Civil No. 10-00133 JMS/KSC, 2010 WL 4812763, at *5 (D. Hawai`i Nov. 17, 2010). The district court in McCarty recognized that such a special relationship "might arise where there is inequality of bargaining power." Id. (citing Miller, 865 P.2d at 543 ("A quasi-fiduciary relationship may exist where the lender has superior knowledge and information,

the borrower lacks such knowledge or business experience, the borrower relies on the lender' [sic] advice, and the lender knew the borrower was relying on the advice.")).

Although Plaintiffs dispute that the Moving Defendants acted solely in the role of a lender, Plaintiffs have not identified any evidence supporting their position. [B. Swartz Decl. at ¶¶ 20, 38; N. Swartz Decl. at ¶¶ 20, 38.] The Court also notes that the Moving Defendants have presented evidence that, at the time Plaintiffs applied for the loan in question, Plaintiffs were business owners and they owned multiple properties. [Loan Application at 2-3.] Plaintiffs dispute the authenticity of the Moving Defendants' exhibit because they state that no one provided them with the original Loan Application, but Plaintiffs have not identified any contrary evidence regarding their business or their other properties. [B. Swartz Decl. at ¶ 17; N. Swartz Decl. at ¶ 17.] Plaintiffs' self-serving declarations alone do not create genuine issues of material fact as to whether the Moving Defendants exceeded the role as a mere lender. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (explaining that uncorroborated allegations and "self-serving testimony" do not create a genuine issue of material fact); F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

44

insufficient to create a genuine issue of material fact.").

        This Court therefore FINDS that there is no genuine
issue of material fact as to Plaintiffs' breach of fiduciary duty
claim, and this Court also FINDS that the Moving Defendants'
relationship with Plaintiffs was merely that of a lender and a
borrower.  The Court CONCLUDES that the Moving Defendants are
entitled to judgment as a matter of law because the Moving
Defendants did not owe fiduciary duties to Plaintiffs.  The
Motion is GRANTED as to Count IV.

        **3.   <u>Count V (Unjust Enrichment Claim)</u>**

        Plaintiffs' unjust enrichment claim fails because
Plaintiffs have an express contractual relationship with the
Moving Defendants and therefore they are limited to contractual
remedies instead of equitable remedies.  For example, in <u>AAA
Hawaii, LLC v. Hawaii Insurance Consultants, Ltd.</u>, this district
court stated:

> Claims for unjust enrichment and quantum
> meruit derive from principles of equity and
> quasi-contract.  <u>See</u> <u>Porter v. Hu</u>, 16[9] P.3d 994,
> 1007 (Haw. 2007); <u>Hiraga v. Baldonado</u>, 96 Hawai`i
> 365, 31 P.3d 222, 229 (Haw. [Ct. App.] 2001).
> Hawai`i law has approved "the principle,
> long-invoked in the federal courts, that 'equity
> has always acted only when legal remedies were
> inadequate.'"  <u>Porter</u>, 169 P.3d at 1007 (quoting
> <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500,
> 509, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959)).  The
> absence of an adequate remedy at law, therefore,
> is the "necessary prerequisite" to maintaining
> equitable claims.  <u>Id.</u> (quoting <u>Bd. of Dirs. of
> the Ass'n of Apt. Owners of Regency Tower Condo.
> Project v. Regency Tower Venture</u>, 2 Haw. App. 506,

> 635 P.2d 244, 249 (Haw. Ct. App. 1981)).
>
> It is also well settled in federal courts that equitable remedies are not available when an express contract exists between the parties concerning the same subject matter.  See Klein v. Arkoma Prod. Co., 73 F.3d 779, 786 (8th Cir. 1996); Paracor Fin. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996); Gibbs-Brower Int'l v. Kirchheimer Bros. Co., 611 F. Supp. 122, 127 (N.D. Ill. 1985); Gerlinger v. Amazon.com, Inc., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004). Hawai`i law has recently endorsed application of this principle as well.  See Porter, 169 P.3d at 1007.  The purpose of the rule is to guard against the use of equitable remedies to "distort a negotiated arrangement by broadening the scope of the contract."  Gibbs-Brower Int'l, 611 F. Supp. at 127.  Where the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity.

CV. No. 08-00299 DAE-BMK, 2008 WL 4907976, at *3 (D. Hawai`i Nov. 12, 2008).  For the same reasons, this Court FINDS that there is no genuine issue of material fact as to Plaintiffs' unjust enrichment claim, and this Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law.  The Motion is GRANTED as to Count V.

### 4.  Count VI (Civil Conspiracy Claim)

Plaintiffs' civil conspiracy claim fails as a matter of law because Hawai`i does not recognize an independent cause of action for "civil conspiracy".  Such a theory of potential liability is derivative of other wrongs.  See, e.g., Chung v. McCabe Hamilton & Renny Co., 109 Hawai`i 520, 530, 128 P.3d 833,

843 (2006); <u>Weinberg v. Mauch</u>, 78 Hawai`i 40, 49, 890 P.2d 277, 286 (1995).  This Court therefore FINDS that there is no genuine issue of material fact as to Plaintiffs' civil conspiracy claim, and this Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law.  The Motion is GRANTED as to Count VI.

### 5.  <u>Count VII (Quiet Title Claim)</u>

In Count VII, Plaintiffs seek, *inter alia*, an order compelling Defendants "to transfer or release legal title and alleged encumbrances thereon and possession of the" Property to Plaintiffs, as well as "a declaration and determination that Plaintiffs are the rightful holders of title to the" Property. [Complaint at ¶¶ 86.1-86.2.]

This district court has construed similar allegations as attempts to assert a claim pursuant to Haw. Rev. Stat. § 669-1(a).  <u>See, e.g.</u>, <u>Phillips v. Bank of Am.</u>, Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *13 (D. Hawai`i Jan. 21, 2011). Section 669-1(a) states: "Action may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."

In <u>Phillips</u>, the district court noted:

in order to assert a claim for "quiet title" against a mortgagee, a borrower must allege they have paid, or are able to tender, the amount of indebtedness.  "A basic requirement of an action

47

to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the deed of trust.'" <u>Rosenfeld v. JPMorgan Chase Bank, N.A.</u>, --- F. Supp. 2d ----, 2010 WL 3155808, at *20 (N.D. Cal. Aug. 9, 2010) (quoting <u>Kelley v. Mortg. Elec. Registration Sys.</u>, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009). "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." <u>Id.</u> (applying California law – <u>Miller v. Provost</u>, 26 Cal. App. 4th 1703, 1707, 33 Cal. Rptr. 2d 288 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted), and <u>Rivera v. BAC Home Loans Servicing, L.P.</u>, 2010 WL 2757041, at *8 (N.D. Cal. July 9, 2010)).

2011 WL 240813, at *13.

In the present case, Plaintiffs have not presented any evidence indicating that they are able to tender the outstanding amount on their loan. This Court therefore FINDS that there is no genuine issue of material fact as to Plaintiffs' quiet title claim, and the Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law. The Motion is GRANTED as to Count VII.

### 6. <u>Count VIII (Violation of BOC Regulations)</u>

Count VIII discusses the Haw. Admin. R. Chapter 178 SMRF and other requirements upon the assignment of a mortgage. [Complaint at ¶¶ 87-94.] The Moving Defendants, however, have presented evidence that there was never an assignment of Plaintiffs' First Mortgage. [Defs.' CSOF No. 10 (citing Agent Decl. at ¶¶ 2-3, Exh. K at 8).] Plaintiffs' counsel may have

48

erroneously included this count because it alleges that "MERS should have filed a SMRF and an assignment of mortgage for each assignment of sale." [Complaint at ¶ 88.]  MERS, however, is not a party to this action, and the mortgage at issue was not part of the MERS system. [Defs.' CSOF No. 9 (citing Agent Decl. at ¶¶ 3, 9, Exh. J).]  Plaintiffs make the bald statement that they dispute that ARB merged with CMI, and they dispute whether CMI is the holder of the First Note and the First Mortgage. [B. Swartz Decl. at ¶ 25; N. Swartz Decl. at ¶ 25.]  As previously stated, however, Plaintiffs' unsubstantiated, self-serving declarations by themselves do not establish a genuine issue of material fact. See Villiarimo, 281 F.3d at 1061; Publ'q Clearing House, 104 F.3d at 1171.

        Moreover, this Court agrees with the Moving Defendants that, even if the merger of ARB into CMI effectuated an assignment, and CMI was required to record an assignment of Plaintiffs' First Mortgage to CMI, Haw. Rev. Stat. § 502-83 only renders the assignment "void as against any subsequent purchaser, lessee, or mortgagee, in good faith and for a valuable consideration, not having actual notice of the conveyance of the same real estate, or any portion thereof, or interest therein, whose conveyance is first duly recorded."  Plaintiffs did not purchase, lease, or mortgage the Property after the unrecorded assignment, and therefore they do not have a private right of

action for the alleged violation of the BOC regulations and § 502-83.

This Court FINDS that there is no genuine issue of material fact as to Plaintiffs' claim for violation of BOC regulations, and this Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law.  The Motion is GRANTED as to Count VIII.

### 7. <u>Count IX (Mistake)</u>

Count IX alleges that, if Defendants' statements and/or omissions were neither fraudulent misrepresentations nor omissions of material fact, the parties entered into the mortgage contract based on mutual mistake.  Plaintiffs assert that they are entitled to, *inter alia*, rescission of the First Note and the First Mortgage.  [Complaint at ¶ 96.]  Plaintiffs, however, have not presented any evidence that the Moving Defendants made any other representations about the terms of the First Note and the First Mortgage other than what is contained in the documents themselves.

The Hawai`i appellate courts have recognized that:

> [I]t is a fundamental rule of contract law that a competent party who signs a written instrument is bound by its terms; and in the absence of allegations of mistake, fraud, or duress, a failure to read or understand the contents of the instrument cannot relieve the signing party of the obligation imposed therein.

<u>Liberty Bank v. Shimokawa</u>, 2 Haw. App. 280, 283, 632 P.2d 289,

50

292 (Ct. App. 1981) (citations omitted).  The Hawai`i Supreme

Court has adopted Restatement (Second) of Contracts § 152 as the

proper test to determine whether rescission of a contract is

warranted based on mutual mistake.  Thompson v. AIG Hawaii Ins.

Co., Inc., 111 Hawai`i 413, 424, 142 P.3d 277, 288 (2006) (citing

AIG Hawai`i Ins. Co. v. Bateman, 82 Hawai`i 453, 456-57, 923 P.2d

395, 398-99 (1996)).  Section 152(1) states:

> Where a mistake of both parties at the time a
> contract was made as to a basic assumption on
> which the contract was made has a material effect
> on the agreed exchange of performances, the
> contract is voidable by the adversely affected
> party unless he bears the risk of the mistake
> under the rule stated in § 154.

Even assuming, *arguendo*, that Plaintiffs' declarations are

sufficient to raise a genuine issue of material fact as to

whether they made a mistake as to a basic assumption of the

mortgage agreement, Plaintiffs have offered no evidence that

raises a genuine issue of material fact as to whether the Moving

Defendants also made a mistake as to a basic assumption of the

mortgage agreement.  Insofar as Plaintiffs have not identified

sufficient evidence to survive summary judgment as to the alleged

mutual mistake, Plaintiffs' failure to read or comprehend the

terms of the First Note and the First Mortgage do not relieve

them from their obligations under those documents.

This Court therefore FINDS that there is no genuine

issue of material fact as to Plaintiffs' mistake claim, and this

Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law.  The Motion is GRANTED as to Count IX.

### 8.   <u>Count X (Unconscionability)</u>

Count X alleges that the terms and conditions of the First Note and the First Mortgage are unconscionable and that Plaintiffs are entitled to, *inter alia*, rescission of those documents.  [Complaint at ¶ 100.]

This district court has recognized that:

> "Unconscionability" is generally a defense to the enforcement of a contract, and is not a proper claim for affirmative relief.  <u>See, e.g.</u>, <u>Gaitan v. Mortg. Elec. Registration Sys.</u>, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); <u>Carey v. Lincoln Loan Co.</u>, 125 P.3d 814, 829 (Or. App. 2005) ("[U]nconscionability is not a basis for a separate claim for relief."); <u>see also</u> <u>Barnard v. Home Depot U.S.A., Inc.</u>, 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law or the UCC allows affirmative relief for unconscionability).
>
> To the extent unconscionability can be addressed affirmatively as part of a different-that is, independent-cause of action, such a claim "is asserted to prevent the enforcement of a contract whose terms are unconscionable." <u>Skaggs v. HSBC Bank USA, N.A.</u>, 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original). <u>Skaggs</u> dismissed a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and

> "failing to give Plaintiff required documents in a timely manner," and not any specific contractual term.  <u>Id.</u>

<u>Phillips</u>, 2011 WL 240813, at *12 (footnote omitted).  Further,

> In <u>Skaggs</u>, this court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission."  2010 WL 5390127, at *3 n.2 (citing <u>Thompson v. AIG Haw. Ins. Co.</u>, 111 Haw. 413, 142 P.3d 277 (2006)).  The court did not mean to suggest that an affirmative claim for "unconscionability" without more is a proper cause of action.  Even in <u>Thompson</u>, the operative complaint did not assert a separate count for rescission or unconscionability.  <u>See</u> <u>Thompson</u>, 111 Haw. at 417, 142 P.3d at 281 (indicating the specific counts were for negligence, breach of duty, and unfair and deceptive trade practices under HRS 480-2).  In <u>Thompson</u>, the remedy of rescission was based on an independent claim. Similarly, a remedy for an unconscionable contract may be possible; a standalone claim asserting only "unconscionability," however, is improper.  <u>See, e.g.</u>, <u>Gaitan v. Mortg. Elec. Registration Sys.</u>, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009).

<u>Id.</u> at *12 n.9.

This Court agrees that Plaintiffs cannot pursue a stand-alone claim of "unconscionability" and therefore the Moving Defendants are entitled to judgment as a matter of law as to Plaintiffs' purported unconscionability claim.  The Motion is GRANTED as to Count X.

### 9.   Count XI (UDAP Claim)

Count XI alleges that Defendants engaged in various UDAPs in connection with the loan origination, including inducing Plaintiffs to accept a loan product that Plaintiffs could not

afford.  [Complaint at ¶¶ 106-106.14.]

First, the Court notes that claims under § 480-2 are subject to a four-year statute of limitations.  Haw. Rev. Stat. § 480-24(a).  The Complaint states that Plaintiffs signed the loan documents on September 25, 2006, [Complaint at ¶ 21,] and the First Note and First Mortgage are dated either September 27, 2006 or September 28, 2006 [Counsel Decl., Exhs. B, C].  Plaintiffs filed the Complaint on November 8, 2010.  None of the tolling provisions in § 480-24(b) apply in the instant case.  This district court has ruled "to construe HRS Ch. 480 in accordance with federal cases interpreting similar federal antitrust laws such as 15 U.S.C. § 15b, . . . the statute of limitations on a HRS Ch. 480 claim may be tolled under the equitable tolling doctrine of fraudulent concealment."  Rundgren v. Bank of New York Mellon, 777 F. Supp. 2d 1224, 1231 (D. Hawai`i 2011).  Plaintiffs, however, have not presented any evidence that would support a finding that fraudulent concealment, or any other applicable equitable tolling doctrine, applies; their claims are therefore time-barred.

Further, this district court has stated that:

The Casinos do not state a claim under section 480-2 of the Hawaii Revised Statutes because "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.'"  McCarty v. GCP Mgmt., LLC, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010) (quoting Champlaie v. BAC Home Loans Servicing,

> LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)).
> See also Sheets v. DHI Mortg. Co., 2009 WL
> 2171085, at *4 (E.D. Cal. July 20, 2009)
> (reasoning that no duty exists "for a lender 'to
> determine the borrower's ability to repay the
> loan. . . . The lender's efforts to determine the
> creditworthiness and ability to repay by a
> borrower are for the lender's protection, not the
> borrower's.'" (quoting Renteria v. United States,
> 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006)).
>
> "[A]s a general rule, a financial institution
> owes no duty of care to a borrower when the
> institution's involvement in the loan transaction
> does not exceed the scope of its conventional role
> as a mere lender of money." Nymark v. Heart Fed.
> Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. Ct.
> App. 1991). Nothing in the Complaint indicates
> that any Defendant "exceed[ed] the scope of [a]
> conventional role as a mere lender of money." The
> claims fail on that basis alone. . . .

Casino v. Bank of Am., Civil No. 10-00728 SOM/BMK, 2011 WL

1704100, at *12-13 (D. Hawai`i May 4, 2011) (some alterations in

Casino). This Court has previously found that Plaintiffs have

not established a genuine issue of material fact as to the

existence of any special circumstances that would give rise to a

fiduciary duty that the Moving Defendants owed to them. See

supra Section II.B.2. This Court also finds that Plaintiffs have

not established that the Moving Defendants made any

misrepresentations that amount to violations of Haw. Rev. Stat.

Chapter 480.

This Court therefore FINDS that there is no genuine

issue of material fact as to Plaintiffs' UDAP claim, and this

Court CONCLUDES that the Moving Defendants are entitled to

judgment as a matter of law.  The Motion is GRANTED as to Count XI.

**10.  Count XII (Failure to Act in Good Faith)**

Count XII alleges that Defendants failed to deal with Plaintiffs in good faith in the loan origination process and in Plaintiffs' attempts to seek loan relief and/or loan modification.  [Complaint at ¶ 120.]

This district court has characterized similar claims as attempts to allege claims for the tort of bad faith.  See, e.g., Phillips, 2011 WL 240813, at *5 (citing Best Place v. Penn Am. Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract)).

> "In Best Place, the Hawaii Supreme Court noted that although Hawaii law imposes a duty of good faith and fair dealing in all contracts, whether a breach of this duty will give rise to a bad faith tort cause of action depends on the duties inherent in a particular type of contract." Jou v. Nat'l Interstate Ins. Co. of Haw., 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (citing Best Place, 82 Haw. at 129, 920 P.2d at 334).  "The court concluded that special characteristics distinguished insurance contracts from other contracts and justified the recognition of a bad faith tort cause of action for the insured in the context of first- and third-party insurance contracts." Id. (citing Best Place, 82 Haw. at 131-32, 920 P.2d at 345-46).  Indeed, "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in Best Place, requires a contractual relationship between an insurer and an insured." Id. (citing Simmons v. Puu, 105 Haw. 112, 120, 94 P.3d 667, 675 (2004)).

Moreover, although commercial contracts for "sale of goods" also contain an obligation of good faith in their performance and enforcement, this obligation does not create an independent cause of action.  See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006).  And Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion."  Id. at 1037 (quoting Francis v. Lee Enters., 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).  It is thus unlikely that Plaintiffs could recover for bad faith as alleged in Count III.

Importantly, even assuming a bad faith tort exists outside the insurance context, it is well-settled that "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed."  Contreras v. Master Fin., Inc., 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance under an extant contract, and not to any pre-contract conduct.")).  Hawaii follows this distinction.  See Young v. Allstate Ins. Co., 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

Thus, because all of Count III's allegations concern pre-contract activities (failing to disclos[e] terms, failing to conduct proper underwriting, making an improper loan to Plaintiffs), Defendants cannot be liable for bad faith.  See id.; see also Larson v. Homecomings Fin., LLC, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

Id. at *5-6 (some alterations in Phillips).

The majority of the alleged failures to act in good faith deal with pre-loan consummation activities.  Even if Hawai`i law did recognize such a claim, a plaintiff cannot establish a breach of the covenant of good faith and fair dealing with actions prior to contract formation.  Plaintiffs also base Count XII on Defendants' alleged actions in the loan modification process, but those are also pre-contract activities because essentially what Plaintiffs sought in the loan modification process was to negotiate a new loan contract.

This Court therefore FINDS that there is no genuine issue of material fact as to Plaintiffs' claim alleging failure to act in good faith, and this Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law.  The Motion is GRANTED as to Count XII.

**11.  Count XIII (Recoupment Claim)**

TILA provides for recoupment, 15 U.S.C. § 1640, but Count XIII expressly asserts "equitable recoupment".  [Complaint at ¶ 124.]

This district court has recognized:

"[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is founded." Bull v. United States, 295 U.S. 247, 262 (1935). The Supreme Court has confirmed that recoupment of damage claims survive TILA's one-year statute of limitations.  Beach [v. Ocwen Fed. Bank], 523 U.S. [410,] 418 [(1998)].  However, to circumvent the

58

statute of limitations, the recoupment claim must
be asserted as a "defense" in an "action to
collect a debt." 15 U.S.C. § 1640(e). Some
courts have held that for a recoupment claim to
survive a motion to dismiss, the plaintiff must
show the following: "(1) the TILA violation and
the debt are products of the same transaction; (2)
the debtor asserts the claim as a defense; and (3)
the main action is timely." Moor v. Travelers
Ins. Co., 784 F.2d 632, 634 (5th Cir. 1986)
(citing In re Smith, 737 F.2d 1549, 1553 (11th
Cir. 1984)); Agustin v. PNC Fin. Servs. Grp., 707
F. Supp. 2d 1080, 2010 WL 1507975, at *18 n.2 (D.
Haw. Apr. 15, 2010).

Rymal v. Bank of Am., CV. No. 10-00280 DAE-BMK, 2011 WL 1361441,

at *9 (D. Hawai`i Apr. 11, 2011) (some alterations in Rymal).

Thus, to the extent that Count XIII does seek

recoupment pursuant to TILA, this claim is duplicative of the

TILA claim. It is time-barred for the same reasons discussed in

connection with Count I and because Plaintiffs are not asserting

TILA recoupment as a defense in an action to collect a debt.

Even if the claim were not time-barred, it fails on the merits

for the same reasons that the TILA claim in Count I fails on the

merits. See supra Section II.A.1.

To the extent that Count XIII is based on equitable

recoupment, that is a defense, not an affirmative claim for

relief. See Rey v. Countrywide Home Loans, Inc., Civil No.

11-00142 JMS/KSC, 2011 WL 2160679, at *13 (D. Hawai`i June 1,

2011) (citing City of Saint Paul, Alaska v. Evans, 344 F.3d 1029,

1034 (9th Cir. 2003) ("[E]quitable recoupment has been allowed by

state courts as well, but it has always been recognized as a

59

defense, not a claim.")).

This Court therefore FINDS that there is no genuine issue of material fact as to Plaintiffs' recoupment claim, and this Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law.  The Motion is GRANTED as to Count XIII.

**12.   Count XIV (NIED/IIED Claim)**

**a.   NIED**

This district court has stated:

> The elements of a claim for negligent infliction of emotional distress ("NIED") are: (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress.  Tran v. State Farm Mut. Automobile Ins. Co., 999 F. Supp. 1369, 1375 (D. Haw. 1998).  A cognizable claim for NIED under Hawaii law also "requires physical injury to either a person or property," see Calleon v. Miyagi, 76 Haw. 310, 320, 876 F.2d 1278 (1994), or a mental illness, see Haw. Rev. Stat. § 663-8.9.

Dowkin v. Honolulu Police Dep't, Civ. No. 10-00087 SOM-LEK, 2010 WL 4961135, at *9 (D. Hawai`i Nov. 30, 2010).  Duty and breach of duty are essential elements of a negligence claim under Hawai`i law.  See Cho v. Hawai`i, 115 Hawai`i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) ("It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4)

damages.").

        As a general rule, lenders do not owe their borrowers a duty of care sounding in negligence. <u>McCarty</u>, 2010 WL 4812763, at *6 (some citations omitted) (citing <u>Champlaie v. BAC Home Loans Servicing, LP</u>, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009); <u>Nymark v. Heart Fed. Sav. & Loan Ass'n</u>, 283 Cal. Rptr. 53, 56 (Cal. App. 1991)).  Similar to the special circumstances exception to the general rule that a borrower-lender relationship does not give rise to a fiduciary relationship, "a lender may owe to a borrower a duty of care sounding in negligence when the lender's activities exceed those of a conventional lender." <u>Champlaie</u>, 706 F. Supp. 2d at 1060 (discussing <u>Nymark</u>).

        For the same reasons discussed with regard to Plaintiffs' breach of fiduciary duty claim, <u>see</u> <i>supra</i> Section II.B.2, this Court also finds that Plaintiffs have not identified a genuine issue of material fact as to whether there are special circumstances that would give rise to duty of care sounding in negligence between Plaintiffs and the Moving Defendants.  Insofar as Plaintiffs cannot establish a duty of care, they cannot establish a prima facie case for NIED.  This Court therefore FINDS that there is no genuine issue of material fact as to the portion of Count XIV alleging an NIED claim against the Moving Defendants, and this Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law.

b.   **IIED**

Under Hawai`i law, there are four elements of an IIED claim.  First, the plaintiff must prove that the conduct was either intentional or reckless.  Second, the conduct in question must have been "outrageous."  Next, the plaintiff must establish causation, and finally, there must be evidence that the plaintiff suffered extreme emotional distress.  See Young v. Allstate Ins. Co., 119 Hawai`i 403, 425, 198 P.3d 666, 688 (2008).  A determination of "outrageous" conduct is fact specific.  Hawai`i courts have defined outrageous conduct as conduct "'without just cause or excuse and beyond all bounds of decency.'"  Chin v. Carpenter-Asui, No. 28654, 2010 WL 2543613, at *4 (Hawai`i Ct. App. June 24, 2010) (some citations omitted) (quoting Lee v. Aiu, 85 Hawai`i 19, 34 n.12, 936 P.2d 655, 670 n.12 (1997)).  If a plaintiff fails to prove that the alleged conduct rose to the level of "outrageous," summary judgment is proper.  See Farmer ex rel. Keomalu v. Hickam Fed. Credit Union, No. 27868, 2010 WL 466007, at *14 (Hawai`i Ct. App. Feb. 2, 2010) (citing Shoppe v. Gucci America Inc., 94 Hawai`i 368, 387, 14 P.3d 1049, 1068 (2000)), cert. denied, 2010 WL 2625261 (Hawai`i June 29, 2010).

> "Default and foreclosure proceedings generally do not rise to the level of extreme and outrageous conduct. Denying a loan modification which might result in foreclosure is no more 'outrageous in character' than actually foreclosing." Erickson v. Long Beach Mortg. Co., No. 10-1423 MJP, 2011 WL 830727, at *7 (W.D. Wash. Mar. 2, 2011) (citation omitted) (dismissing IIED claim on summary

judgment).  But cf. Bass v. Ameriquest Mortg. Co.,
Civ. No. 09-00476 JMS-BMK, 2010 WL 3025167, at
*10-11 (D. Haw. Aug. 3, 2010) (denying summary
judgment as to an IIED claim where the plaintiff
asserted that the defendant "forged her signature
on the 2006 loans, refused to honor [her] right of
cancellation of the loans when she discovered the
forgeries, and commenced foreclosure proceedings
against [her] when she failed to make her loan
payments").

Uy v. Wells Fargo Bank, N.A., Civ. No. 10-00204 ACK-RLP, 2011 WL

1235590, at *14 (D. Hawai`i Mar. 28, 2011) (alterations in Uy).

        Based upon the foregoing principles, this Court finds

that Plaintiffs have failed to identify evidence that would raise

a genuine issue of material fact as to whether the actions taken,

and representations made, by the Moving Defendants constituted

outrageous conduct.  This Court therefore FINDS that there is no

genuine issue of material fact as to the portion of Count XIV

alleging an IIED claim against the Moving Defendants, and this

Court CONCLUDES that the Moving Defendants are entitled to

judgment as a matter of law.

        The Motion is GRANTED as to Count XIV.

        **13.  Count XV (Privacy Claim)**

        Count XV alleges that Defendants failed to provide

Plaintiffs with notices of their right to privacy under the

Hawai`i State Constitution and that Defendants failed to protect

Plaintiffs' right to privacy in the personal and financial

information that Defendants "disclosed to non affiliated third

parties in an egregious and ongoing and far-reaching fraudulent

scheme to improperly use the Plaintiff's [sic] identify, and private financial information to sell asset-backed certificates, shares or bonds . . . ."  [Complaint at ¶ 131.]

This district court has recognized that there is "no independent state law claim for a violation of privacy in bank records under the Hawaii State Constitution." Flowers v. First Hawaiian Bank, 289 F. Supp. 2d 1213, 1221 (D. Hawai`i 2003) (citing State v. Klattenhoff, 71 Haw. 598, 801 P.2d 548, 552 (1990) ("we adopt the rule set forth in United States v. Miller, [425 U.S. 435, 440-43 (1976),] and follow the majority of states in finding no reasonable expectation of privacy in personal bank records")).

Insofar as there is no private right of action, this Court FINDS that there is no genuine issue of material fact as to Plaintiffs' privacy claim, and this Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law. The Motion is therefore GRANTED as to Count XV.

### 14.  Count XVI (Haw. Rev. Stat. Chapter 667 Claim)

The Moving Defendants seek summary judgment on Count XVI, arguing that CMI completed the foreclosure sale in complete compliance with Haw. Rev. Stat. Chapter 667, as evidenced by the Foreclosure's Affidavit.  They assert that CMI: (1) was represented by an attorney licensed to practice in Hawai`i; (2) published the required advertisement in The Honolulu Star-

64

Advertiser on three separate occasions, at least fourteen days before the public auction; (3) timely posted notice on the Property; and (4) recorded the Foreclosure Affidavit.  Plaintiffs present no evidence to the contrary and fail to establish a genuine issue of material fact with respect to CMI's foreclosure-related conduct.

This district court has explained that a wrongful foreclosure claim will not lie where the foreclosing party properly provided all required notices.

> Initially, Plaintiffs have not identified any procedural errors in the foreclosure process itself that would make the foreclosure "wrongful." See Doran v. Wells Fargo Bank, 2011 WL 5239738, at *9 (D. Haw. Oct. 31, 2011) (indicating that a "wrongful foreclosure" claim failed under Hawaii law because the notice of foreclosure was procedurally proper under HRS Ch. 667, and "the loan modification process did not invalidate the notice because an oral promise of a future loan modification does not supercede a mortgagee's right to sell").  Moreover, although Hawaii has not specifically recognized a common law wrongful foreclosure cause of action, "[s]ubstantive wrongful foreclosure claims [in other jurisdictions] typically are available after foreclosure and are premised on allegations that the borrower was not in default, or on procedural issues that resulted in damages to the borrower." Cervantes v. Countrywide Home Loans, 656 F.3d 1034, 1043 (9th Cir. 2011).

Matsumura v. Bank of Am., N.A., CIV. No. 11-00608 JMS-BMK, 2012 WL 463933, at *3 (D. Hawai`i Feb. 10, 2012).

For the same reasons, the Court FINDS that Plaintiffs have not established a genuine issue of material fact with

respect to their Chapter 667 claim, and this Court CONCLUDES that the Moving Defendants are entitled to judgment as a matter of law.   The Motion is therefore GRANTED as to Count XVI.

## III. **Other Defendants**

Plaintiffs' Complaint also alleges claims against American Guardian and First National.   This Court expresses no opinion as to the merits of Plaintiffs' claims against these Defendants.   The Court notes that there is no evidence in the record that Plaintiffs ever completed service of the Complaint on either American Guardian or First National.   The Court, however, will address this issue in a separate order.

**CONCLUSION**

On the basis of the foregoing, Defendants' Motion for Summary Judgment on All Claims Against Movants in the Complaint Filed on November 8, 2010, which Defendants originally filed on March 18, 2011 and re-filed on October 3, 2012, is HEREBY GRANTED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 28, 2012.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

BURTON SWARTZ, ET AL. V. CITI MORTGAGE, INC., ET AL; CIVIL NO. 10-00651 LEK-RLP; ORDER GRANTING DEFENDANTS CITI MORTGAGE, INC. AND ABN AMRO MORTGAGE GROUP INC.'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS AGAINST MOVANTS IN THE COMPLAINT FILED ON NOVEMBER 8, 2010